UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>ELPHI</small> A<small>UTOMOTIVE</small> PLC,

    Plaintiff,

v.

J<small>OHN</small> P. A<small>BSMEIER</small>,

    Defendant.

Case No. 15-cv-13966

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
D<small>AVID</small> R. G<small>RAND</small>

**O<small>PINION AND</small> O<small>RDER</small> D<small>ENYING</small> D<small>EFENDANT</small>'<small>S</small> M<small>OTION TO</small> S<small>TAY</small> P<small>RELIMINARY</small> I<small>NJUNCTION</small> P<small>ENDING</small> A<small>PPEAL</small> [50] <small>AND</small> M<small>ODIFYING THE</small> P<small>RELIMINARY</small> I<small>NJUNCTION</small>**

**I. I<small>NTRODUCTION</small>**

On November 11, 2015, Delphi Automotive PLC ("Plaintiff") filed a complaint against its former employee, John Absmeier ("Defendant"), alleging that Defendant breached his contractual obligations, misappropriated trade secrets, and breached his fiduciary duties by terminating his employment with Plaintiff and accepting employment at Samsung. *See* Dkt. No. 1, pp. 12–16 (Pg. ID No. 12–16); Dkt. No. 16, pp. 22–26 (Pg. ID No. 154–58).

The Court issued a preliminary injunction on March 1, 2016, enforcing a modified version of the non-compete and confidentiality agreements between Plaintiff and Defendant that prohibited Defendant from working in the field of

autonomous vehicle technology for one year, barred Defendant from using or disclosing Plaintiff's confidential business information and trade secrets, and proscribed either party from destroying, altering, modifying, or concealing any data related to the litigation.[1] Dkt. No. 47, pp. 34–35 (Pg. ID No. 1003–04).

Presently before the Court is Defendant's Motion to Stay the Preliminary Injunction Pending Appeal. Dkt. No. 50. The Court ordered expedited briefing by both parties. Dkt. No. 51. Upon review of the briefing, the Court concludes that oral argument will not aid in the resolution of the instant motion. Accordingly, the Court will resolve Defendant's present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). After considering the parties' briefs and applicable law, the Court will **DENY** Defendant's Motion to Stay the Preliminary Injunction Pending Appeal [50]. The Court's reasoning is set forth in detail below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) authorizes a district court to stay or modify an injunction pending appeal. ("While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.").

---

[1] The underlying facts were explained in detail in the Court's Order Granting Plaintiff's Motion for Preliminary Injunction and will not be repeated here.

In determining whether to grant a stay, the Court must weigh the same four factors that are considered when determining whether to grant an injunction. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id*. "All four factors are not prerequisites but are interconnected considerations that must be balanced together." *Id*.

There is generally a higher burden that must be satisfied by a party seeking a stay, than one seeking a preliminary injunction. *Id*. Although the "movant need not always establish a high probability of success on the merits," the movant "must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Id*. There is an inverse relationship between the amount of harm that the movant will suffer absent the stay, and the probability of success the movant must demonstrate. *Id*. At the bare minimum, the movant must show "serious questions going to the merits." *Id.* at 154 (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). The following three factors are considered in evaluating the harm that will occur absent a stay: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Id*.

## III. DISCUSSION

### A. Factors To Be Weighed In Determining Whether To Issue A Stay Regarding The Injunction As A Whole

#### 1. Likelihood Of Success On The Merits Of The Appeal

Many of Defendant's arguments in support of the motion to stay are familiar, essentially rehashing his unsuccessful arguments against the motion for preliminary injunction. The bulk of these arguments focus on the Court's application of Michigan law to the claims, rather than Defendant's preference for California law.

Defendant first asserts, without citing to precedent, that the Court erred in not applying Restatement (Second) of Conflict of Laws § 196 and that this constitutes reversible error. Dkt. No. 50, pp. 7–8 (Pg. ID No. 1014–15).

As stated in the Order, a federal court whose jurisdiction is based on diversity of citizenship applies the choice-of-law rules of the forum state—in this case, Michigan. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Michigan, § 196 is not the singular authority to determine which state's law is to be applied, nor does it displace Michigan's reliance on §§ 187, 188. Instead, § 196 applies only to contracts for the rendition of services, and the contracts in dispute exchange stock awards for an agreement to not compete or share confidential business information or trade secrets. While *Kipin Indus., Inc. v. Van Deilen Int'l,*

*Inc.*, 182 F.3d 490, 496 (6th Cir. 1999),[2] utilizes § 196 in determining choice of law for a services contract, the bulk of authority in Michigan unequivocally endorses § 188 for general choice of law principles. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124, 528 N.W.2d 698, 703 (1995) (adopting the approach set forth in Restatement (Second) of Conflict of Laws §§ 187, 188). Thus, the Court does not find that a failure to rely solely on § 196 constitutes a reversible error with a likelihood of success on appeal.

Next, Defendant argues that the Court erred in not finding that the non-compete was contrary to California's fundamental public policies and that California had a materially greater interest in the dispute. Dkt. No. 50, pp. 8–9 (Pg. ID No. 1015–16). Defendant cites to a California state court case—*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (Cal. 2008)—and mentions other "subsequent seminal California decisions," in support of his argument that he has a strong likelihood of success in the appeal, while dismissing the Court's reliance on local precedent, *Lowry Computer Products, Inc. v. Head*, 984 F. Supp. 1111, 1114 (E.D. Mich. 1997).

---

[2] The Court was unable to find any cases other than *Kipin Industries*, and one case citing it, *Prof'l Consultation Servs. Inc. v. Schaefer & Strohminger Inc.*, 412 F. App'x 822, 825 (6th Cir. 2011), where § 196 of the Restatement (Second) of Conflict of Laws was utilized to determine a choice of law dispute under Michigan law. The Court did not see any cases in Michigan state courts that utilized § 196, let alone base their decision solely upon it. Accordingly, the Court relied far more on the balancing test of § 188, which the law of the forum appears to favor.

As previously stated, a district court acting in diversity is to apply the choice-of-law rules of the forum, which is Michigan, not California. *See Klaxon*, 313 U.S. at 496. In cases utilizing the law of this forum, Michigan's interest in protecting its companies has repeatedly outweighed other state's policies which disfavor non-compete agreements. *See*, *e.g.*, *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 5682317, at *5 (W.D. Mich. Sept. 21, 2015) (finding that Michigan law applied despite Louisiana's "strong public policy against covenants not to compete"); *Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2008) (applying Michigan law to enforce a non-compete agreement, where the defendant argued application of Michigan law would run contrary to a fundamental policy of the State of Texas); *Lowry Computer Products, Inc. v. Head*, 984 F. Supp. 1111, 1113 (E.D. Mich. 1997) (noting that, were the court to engage in Restatement analysis, Michigan law would apply instead of California's, where there was a non-compete clause paired with a contested trade secrets claim). The Sixth Circuit advocates caution when there is a request to hold a contract clause unenforceable on public policy grounds, and the Court's Order proceeded accordingly. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 362 (6th Cir. 1993).

Defendant then proceeds to argue that the stock award has nothing to do with the present dispute. Dkt. No. 50, pp. 9–10 (Pg. ID No. 1016–17). Instead, he

-6-

claims that the subject matter of the agreements includes only his services and Plaintiff's trade secrets. *Id.*

This dispute would not be presently before the Court without the stock agreements, for which Defendant signed non-compete and confidentiality agreements that he then allegedly breached. Defendant was not required to sign the agreements in order to continue providing services to Plaintiff. Rather, the only reason that the agreements were voluntarily signed was to procure stock awards. Had Defendant not signed the non-compete and confidentiality agreements, he still would have been providing his services to Plaintiff, but would not have received any stocks. Since the stock award was an integral part of the parties' agreements in 2014 and 2015, the stock award was properly considered in the balancing under § 188.

Next, Defendant asserts that it was an error for the Court to find that Plaintiff expected that its stock awards and corresponding agreements would be governed by a singular choice of law. Dkt. No. 50, pp. 10–11 (Pg. ID No. 1017–18). Defendant argues an all-or-nothing approach, wherein Plaintiff's desire for a singular choice of law could only be a factor weighed by the Court if the Court applied Plaintiff's original choice of New York law. *See id.*

The Court's finding that New York law was unrelated to the present dispute under § 187 was the reason that the Court engaged in the balancing of factors

under § 188. That balancing includes looking to the principles of § 6, such as the "certainty, predictability and uniformity of result." Restatement (Second) of Conflict of Laws § 6(f). Applying Michigan law to the agreements in question provides "certainty, predictability and uniformity" because all agreements signed in exchange for stock awards could be governed by one state's law, rather than the myriad of diverse outcomes that may result from interpreting each agreement according to the current location or preference of each executive. This was just one of the multiple factors considered and balanced by the Court, and did not singularly determine the Court's application of Michigan law.

Defendant makes several more unpersuasive arguments. He claims that the Court did not consider that Defendant spent most of his time in California, which the Court explicitly stated in the Order. Dkt. No. 50, p. 11 (Pg. ID No. 1018); Dkt. No. 47, p. 9 (Pg. ID No. 978) ("Defendant himself has lived and worked in California at all times since signing the Agreements."). Defendant claims that the Order creates unfair policy by allowing a Michigan employer an unfair advantage while enjoying the benefits of running a business in California, but does not provide any precedent to establish that a defendant's belief that something is not fair is a reversible error that is likely to be overturned on appeal. Dkt. No. 50, p. 11–13 (Pg. ID No. 1018). As to Defendant's arguments regarding perceived

vagueness in the Court's Order and the lack of a bond requirement, the Court will address these two issues in later sections.

In sum, the Court does not find that Defendant established a likelihood of reversal in his arguments, which centered on his disagreement with the Order's choice of Michigan law. This first factor does not weigh in favor of granting a stay.

### 2. Likelihood of Irreparable Harm

In the next section, Defendant alleges that the injunction causes him, his new employer, Samsung, and the general public irreparable harm because he cannot work on autonomous vehicle technology.[3] Dkt. No. 50, pp. 15–16 (Pg. ID No. 1022–23). Defendant also believes that the injunction will hurt his career advancement. *Id*. at 15.

These arguments are not persuasive. Defendant needed to provide the Court with adequate proof of the substantiality of his alleged injury and the likelihood of its occurrence, which he has not done. *See Griepentrog*, 945 F.2d at 154. The progression and advancement of autonomous vehicle technology will continue, and the public will continue to benefit, despite Defendant's brief hiatus from working in this specific field. Furthermore, Defendant has not been enjoined from working altogether and is free to continue developing his career, at Samsung or elsewhere.

---

[3] As mentioned previously, the Court will address Defendant's vagueness argument in a subsequent section.

The Court modified the scope of the non-compete provision so that Defendant could continue working in *any other field* than autonomous vehicle technology until November 2016. If Defendant is found to have been wrongfully enjoined in the future, he may pursue recovery for the monetary damages he incurred.

Defendant's other argument, supported solely by link to "techcrunch.com," that the injunction irreparably injures the public because it "restricts the non-tortious exchange of ideas and personnel that allows California's technology industry to thrive," also lacks merit. *Id*. at 16. Thus, the second factor does not weigh in favor of granting a stay.

### 3. Harm to Others

Defendant proceeds to argue that Plaintiff will not suffer irreparable injury if the Order is stayed because Plaintiff did not show a strong likelihood of success on some of its claims at the time of the motion for preliminary injunction. *See* Dkt. No. 50, p. 17 (Pg. ID No. 1024). This argument is in direct opposition to the Order's finding that Plaintiff may suffer a loss of competitive advantage of an incalculable sum if Defendant is allowed to violate the non-compete provision or share Plaintiff's confidential information with his new employer. Dkt. No. 47, pp. 30–31 (Pg. ID No. 999–1000). Since Defendant merely stated that Plaintiff would not be harmed, rather than providing any support that countered the Court's

earlier determination on this issue, this factor does not weigh in favor of granting a stay.

### 4. Public Interest

In the final section, Defendant again argues that it is unfair to enforce a non-compete agreement between a Michigan company and an employee working within California. Dkt. No. 50, p. 17–18 (Pg. ID No. 1024–25). Defendant cites to California code that makes it a crime for an employer to require an employee to enter into a non-compete agreement, ignoring that Defendant was not "required" to sign the agreement but did so voluntarily in exchange for stock benefits. There is a greater public interest in enforcing voluntarily assumed contract obligations, Dkt. No. 47, p. 33 (Pg. ID No. 1002), than there is in allowing an individual to evade contract obligations as soon as it is no longer in his or her economic best interest.

For the same reasons that the Court rejected Defendant's similar arguments in the above sections, the Court finds that these arguments do not establish that the public interest would be served by staying the injunction. This final factor does not weigh in favor of granting a stay.

## B. Clarifying the Scope of the Preliminary Injunction

Defendant contends that the Court's Order is "unlawfully vague in its directives" because it did not delineate the specific technologies that are contained

in the field of autonomous vehicle technology and whether Defendant may work on technologies that have applications including, but not limited to, autonomous vehicles. *See* Dkt. No. 50, p. 13 (Pg. ID No. 1020). Defendant also takes issue with the part of the Order that barred him from using or disclosing "Plaintiff's confidential business information, trade secrets, and/or proprietary information." *Id.* at 13–14.

Rule 65(d) does not require that a court identify every conceivable act that would be covered by an injunction. Fed. R. Civ. P. 65(d) (requiring that the court state the reasons why the injunction issued; state the injunction's terms specifically; and describe the acts restrained in reasonable detail). *See also Mayfield Eng'g, Inc. v. Ohio Tpk. Comm'n*, 173 F.3d 855 (6th Cir. 1999) (finding that Rule 65(d) did not require the court to specifically identify trade secrets in an injunction where the parties understood the meaning from previous negotiations); *3M v. Pribyl*, 259 F.3d 587, 598 (7th Cir. 2001) ("Further, Rule 65(d)'s specificity requirement does not demand that the court issuing the injunction disclose the trade secrets in its order.").

A district court is "entitled to expect that [an] injunction would be interpreted with a modicum of common sense." *United States v. ITS Fin., LLC*, 592 F. App'x 387, 398 (6th Cir. 2014) (finding an injunction enjoining a party from "[o]perating, or being involved with in any way, any work or business relating in

any way to preparation of tax returns" to be sufficiently specific). The language of the injunction need only be as specific as possible in light of the commercial environment in which it arises, such that a reasonable person could understand what conduct is proscribed. *Medtronic, Inc. v. Benda*, 689 F.2d 645, 649 (7th Cir. 1982).

Additionally, Federal Rule of Civil Procedure 65(c) allows the Court to modify an injunction to protect the rights of the party against whom the injunction was entered. *See*, *e.g.*, *Fullmer v. Michigan Dep't of State Police*, 207 F. Supp. 2d 663, 665 (E.D. Mich. 2002) (modifying an injunction while declining to stay pending appeal). Because clarification of the acts restricted may aid in protecting Defendant's rights, such that it may prevent any potential injury, the Court will further specify the scope of activities from which Defendant is precluded from engaging in. The modification, to increase the clarity of the Court's March 1, 2016 Order, is included in the conclusion of this order.

## C. Security Under Federal Rule Of Civil Procedure 65(c)

Next, Defendant asserts that the Court erred by not requiring Plaintiff to give a security in advance of the preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(c). Dkt. No. 50, pp. 14–15 (Pg. ID No. 1021–22). Without citing to any Sixth Circuit case law, Defendant argues that Plaintiff is obligated to give security under Rule 65(c). Neither party addressed the issue of security or

amount thereof in their briefing or during oral argument on the preliminary injunction motion.

In the Sixth Circuit, a district court has discretion to decide whether to require the posting of security when issuing an injunction. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (noting that although "the language of Rule 65(c) appears to be mandatory, . . . the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."). "However, a district court errs when it 'fail [s] to . . . expressly consider[ ] the question of requiring a bond' *when the issue has been raised*." *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 953 (6th Cir. 2007) (quoting *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978)) (alteration in original) (emphasis added). There is no special exception that mandates that a district court is obligated to require the posting of a security or bond when issuing injunctions in disputes between companies and their former employees. *See*, *e.g.*, *Radio One, Inc. v. Wooten*, 452 F. Supp. 2d 754, 760 (E.D. Mich. 2006) (declining to require a company post security as prerequisite to the issuance of an injunction to enforce a non-compete agreement).

While the Court exercised its discretion not to require Plaintiff to post a security, the March 1, 2016 Order did not clearly state that fact. Accordingly, the Court now clarifies that it has exercised its discretion that a bond is not required.

### IV. CONCLUSION

For the reasons stated above, Defendant's request for a stay of the injunction is **DENIED**. However, the Court **MODIFIES** the injunction to provide further clarity and guidance.

More specifically, Defendant is enjoined from:

a) engaging in direct or indirect competition with Plaintiff in the field of autonomous vehicle technology for a period of one year from the date of his termination with Plaintiff;

    i. The field of autonomous vehicle technology is deemed to include the following technologies, as applied to the development of autonomous vehicles: radar, RaCam, Mobileye, vision-based systems (cameras and software), LIDAR, localization systems, intelligent software algorithms, a suite of advanced driver assistance systems, power electronics, battery systems, ADAS sensors, control platforms, high voltage wiring and connection systems, charge couplers, chip set platforms, robotics, and active safety products;

    ii.    The injunction shall not prohibit Defendant from working on the above technologies if such work is not in connection with autonomous vehicles;

b) using or disclosing any trade secret, confidential information or proprietary information of Plaintiff;

    i.    Plaintiff's trade secrets, confidential information, and proprietary information shall be deemed to include the following information, or data similar to it: business development information, client correspondence, client lists, costs, financial information, forecasting information, internal weaknesses, marketing data, marketing plans, meeting minutes, pricing contracts, profit margins, project costs, proposals, prospect lists, prospective employee lists, requests for proposals, sales leads, and strategic planning documents.

Dated:    March 24, 2016

    /s/Gershwin A Drain  
    HON. GERSHWIN A. DRAIN  
    United States District Court Judge